UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

FNU LNU, a/k/a CRUZ MANUEL RAMOS,

      Defendant-Petitioner,

  -v-                                                       No.  06 CR 172-LTS
                                                             No.  16 CV 4499-LTS

UNITED STATES OF AMERICA,

      Respondent.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        In 2009 and 2010, Petitioner Cruz Manuel Ramos ("Petitioner" or "Ramos") was tried before juries and convicted of the crimes charged in six separate counts of the sixth superseding indictment in the above-captioned criminal case: (i) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 ("Count One"); (ii) attempted armed Hobbs Act robbery, in violation of 18 U.S.C. § 1951 ("Count Two"); (iii) brandishing and using a firearm during and in relation to a crime of violence (the attempted robbery charged in Count Two), in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Three"); (iv) conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 ("Count Twelve"); and (v) two counts of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Counts Fourteen and Fifteen").  (See Docket Entry No. 253.)  In 2011, this Court sentenced Petitioner principally to 348 months of imprisonment and 12 years of supervised release.  (Id.)  Petitioner now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that his Count Three conviction should be vacated because the crime charged in Count Two is not a crime of violence within the meaning of section 924(c) following

the Supreme Court's decision in United States v. Johnson, 135 S. Ct. 2551 (2015).  (See Cruz M. Ramos' Amended Motion to Vacate under 28 U.S.C. § 2255 (the "Motion"), Docket Entry No. 304.[1])  Petitioner also seeks resentencing on all counts on the ground that his prior state conviction, which enhanced his federal sentence, is no longer valid.  (Id.)

The Court has considered carefully the parties' submissions and, for the following reasons, the Petitioner's motion is granted in part and denied in part.

BACKGROUND

The parties' familiarity with the facts of this case, most of which are laid out in the Court's September 4, 2015, Memorandum Opinion and Order addressing Petitioner's first petition to vacate his sentence under 28 U.S.C. § 2255, is assumed.  (See Docket Entry No. 275.) The following is a brief summary of the facts relevant to this Memorandum Opinion and Order.

On May 19, 2009, prior to Ramos' trials, the Government filed a prior felony information pursuant to 21 U.S.C. § 851, premised on Petitioner's 1996 felony conviction in New Jersey for distributing a controlled substance (the "New Jersey Conviction").  (Docket Entry No. 140.)

On July 6, 2009, following a trial focused on the charges relating to a conspiracy to rob drug dealers between 2004 and 2005, a jury convicted Ramos of the crimes charged in Counts One, Two, Three and Twelve of the Superseding Indictment S6 06-CR-172-LTS ("Sixth Superseding Indictment").  (See Unnumbered Minute Entry, dated July 6, 2009.)  On April 13, 2010, following a second trial focused on the charges relating to sales of drugs to undercover law enforcement personnel in 2008, a second jury convicted Ramos of the crimes charged in Counts

---

[1] All docket entry references are to 06 CR 172.

Fourteen and Fifteen of the Sixth Superseding Indictment.  (See Unnumbered Minute Entry, dated April 13, 2010.)

Sentencing

The maximum custodial sentence that Ramos could have received as a result of his convictions of the crimes charged in Counts One and Two was 20 years on each count.  (See 18 U.S.C. § 1951(a).)  Count Three required the imposition of a mandatory imprisonment term of 60 months, to run consecutively to any other term of imprisonment imposed.  (See Motion at 1; 18 U.S.C. § 924(c)(1)(A)(i), 924(c)(1)(D)(ii)).  The prior felony information based on the New Jersey Conviction "raised [Ramos'] mandatory minimum term of imprisonment [for Count 12] from 10 years to 20 years, and the mandatory minimum term of supervised release [for that count] from 5 years to 10 years.  For Counts 14 and 15, [the prior felony information] raised the maximum term of imprisonment from 20 years to 30 years, and the mandatory minimum term of supervised release from 3 years to 6 years."  (Motion at 1-2; see also 21 U.S.C. § 841(b)(1).)

The Pre-Sentence Investigation Report ("PSR"), as amended to reflect the Court's Sentencing Guideline application decisions, calculated Petitioner's total offense level as 40 and his Criminal History Category as II, according three criminal history points to the New Jersey Conviction.  (PSR ¶¶ 108, 114-15.)  Based on these calculations, under the November 1, 2010, edition of the U.S. Sentencing Guidelines Manual, Ramos' advisory custodial sentencing guideline range was 324-405 months of imprisonment.  (PSR ¶ 151.)  In addition, the Count Three conviction required the imposition of a mandatory consecutive term of 60 months' imprisonment. (PSR ¶ 148.)

On January 19, 2011, the Court sentenced Ramos principally to 348 months of imprisonment, comprising concurrent terms of 240 months' imprisonment on Counts One and

Two, 288 months' imprisonment on Count Twelve, and 240 months' imprisonment on Counts Fourteen and Fifteen, followed by a mandatory consecutive term of 60 months' imprisonment on Count Three.  (See docket entry no. 253.)  The Court also imposed concurrent supervised release terms, comprising three years as to each of Counts One and Two; five years as to Count Three; and twelve years as to each of Counts Twelve, Fourteen and Fifteen.  (Id.)  The Court imposed a $500,000 order of forfeiture and a $600 mandatory assessment.  (Id.)  The judgment of conviction was entered on February 1, 2011.  (Docket Entry No. 253.)

Post-sentencing Procedural History

Ramos appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit.  On May 9, 2012, the Second Circuit affirmed the judgment.  (See Docket Entry No. 262.)

On June 14, 2016, Ramos filed his second motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  (Docket Entry No. 284.)  In September 2016, at Petitioner's request, the Court stayed Petitioner's motion pending of the issuance of the Second Circuit's decisions in United States v. Hill, 890 F.3d 51 (2d Cir. 2018) (amended opinion), and United States v. Barrett, 937 F.3d 126 (2d Cir. 2018), because the resolution of those two cases could have affected the merits of the Petitioner's claim that "[t]he predicate offense in Count 2 (attempted robbery under 18 U.S.C. [section] 1951) is not a crime of violence for purposes of 18 U.S.C. [section] 924(c) following [the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson")], meaning that Count 3 (brandishing a firearm in furtherance of Count 2) should be dismissed."  (Id.; see Docket Entry Nos. 288 and 289.)

In June 2018, the Office of the Attorney General of New Jersey moved to vacate Ramos' 1996 New Jersey Conviction because it "fell within 'a large number of cases involving

similar claims of racial profiling by the State Police. . . ." (Motion at 3-4.)  Ramos' New Jersey Conviction was subsequently vacated by a New Jersey court.  (Id. at 4.)

The stay of Ramos' section 2255 motion was lifted on July 12, 2019.  (Docket Entry No. 315.)  Petitioner subsequently filed an amended motion seeking, in addition to dismissal of Count Three, resentencing on all counts as a result of the vacatur of his New Jersey Conviction.  (Docket Entry No. 304).  This Memorandum Opinion and Order addresses both of the issues raised in the amended motion.

## DISCUSSION

Ramos seeks to vacate, set aside, and correct portions of his sentence under 28 U.S.C. section 2255, arguing that relief is warranted because the grounds for his conviction under Count Three and the prior New Jersey Conviction, which was used to enhance his federal sentence, are no longer valid.  A petitioner may prevail on a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. section 2255 if he can show that his sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was entered by a court without jurisdiction to impose the sentence; (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack.  See 28 U.S.C. § 2255(a).  Collateral relief under 28 U.S.C. section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  If a court concludes that the sentence imposed is open to collateral attack, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or

correct the sentence as may appear appropriate." 28 U.S.C.A. § 2255(b) (Westlaw through P.L. 116-158).

*Johnson* Aspect of Motion

Petitioner first seeks vacatur of his Count Three conviction under 18 U.S.C. section 924(c) (possessing and brandishing a firearm during a crime of violence) on the ground that the Count Two predicate offense (attempted armed Hobbs Act robbery) is not a crime of violence in light of the Supreme Court's decision in Johnson (his "Johnson Motion"). Title 18 U.S.C. section 924(c) provides, in relevant part, that

> any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime,

be subject to additional penalties. 18 U.S.C.A. § 924(c)(1)(A) (Westlaw through P.L. 116-158). The statute defines a "crime of violence" as:

> an offense that is a felony and (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C.A. § 924(c)(3) (A-B) (Westlaw through P.L. 116-158). In United States v. Davis, the Supreme Court applied principles enunciated in Johnson to hold that, because section 924(c)(3)(B), also known as the residual clause, is unconstitutionally vague, a crime will only qualify as a crime of violence for purposes of a conviction under section 924(c) if it meets the test set forth in section 924(c)(3)(A) (the "Force Clause" or the "Elements Clause"). 139 S. Ct. 2319 (2019). The Davis Court reaffirmed that, when determining whether an offense qualifies as a crime of violence, courts must use the "categorical approach." Id. at 2328-35. Under this approach, the court "evaluate[s] whether 'the minimum criminal conduct necessary for

conviction under a particular statute' necessarily involves violence.  In doing so, [the court] focus[es] only on the elements of the offense and do[es] not consider the particular facts of the underlying crime." United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019), cert. denied, No. 19-6907, 2020 WL 129958 (U.S. Jan. 13, 2020).

The Second Circuit has concluded that substantive Hobbs Act robbery is categorically a crime of violence for a section 924(c) conviction, whereas conspiracy to commit Hobbs Act robbery is not.  See Hill, 890 F.3d 51; Barrett, 937 F.3d 126.  The Court of Appeals has "never decided whether attempted Hobbs Act robbery is a 'crime of violence' under the elements clause."[2] United States v. Biba, 788 F. App'x 70, 72 (2d Cir. 2019) (vacating defendant's section 924(c) conviction based on the predicate act of attempted robbery because defendant did not allocute to the elements of attempted robbery during his guilty plea).  The courts that have addressed this issue have reached disparate conclusions as to whether or not attempted Hobbs Act robbery is a crime of violence.  Compare, e.g., Crowder v. United States, No. 05 CR 67-02 (CM), 2019 WL 6170417 (S.D.N.Y. Nov. 20, 2019) (finding that a categorical approach analysis leads to the conclusion that attempted Hobbs Act robbery is a crime of violence under the Elements Clause of section 924(c) because an attempt conviction requires a substantial step and intent to accomplish every element of substantive crime, including use or

---

[2]   In its Opposition, the Government first states that the predicate offense for Ramos' section 924(c) charge was "attempted Hobbs Act conspiracy[.]" See Government Opposition Letter (the "Opp."), Docket Entry No. 320 at 2).  The Government then characterizes the predicate act as "Hobbs Act conspiracy[.]" Id.  The Government subsequently argues that Ramos' Motion "is squarely foreclosed by the Court of Appeals for the Second Circuit's decision" in Hill because Hill held that "substantive Hobbs Act robbery, the crime of which the defendant was convicted in Count Two, categorically qualifies as a 'crime of violence'[.]" Id.  The Government incorrectly identified the predicate act for Ramos' Section 924(c) conviction in all three instances.  Count Two charged Ramos with attempted Hobbs Act robbery and he was convicted of that crime.  Therefore, the decisions in Hill and Barrett do not foreclose Ramos' argument.

threat of force) and United States v. St. Hubert, 909 F.3d 335 (11th Cir. 2018) ("St. Hubert II") (same), cert. denied, 139 S. Ct. 1394 (2019), with United States v. Alfonso, No. 3:17CR128 (JBA), 2019 WL 1916199 (D. Conn. Apr. 30, 2019) (holding that attempted Hobbs Act robbery is categorically not a crime of violence because "the elements of attempt to commit robbery could clearly be met without any use, attempted use, or threatened use of violence whatsoever") and United States v. Tucker, No. 18 CR 0119 (SJ), 2020 WL 93951 (E.D.N.Y. Jan. 8, 2020) (same).

In St. Hubert II, the Eleventh Circuit held that attempted Hobbs Act robbery constitutes a crime of violence within the meaning of section 18 U.S.C. section 924(c). 909 F.3d at 351. The Eleventh Circuit noted that, in order to be convicted of an attempt to commit a federal crime, a defendant "must: (1) have the specific intent to engage in the criminal conduct with which he is charged; and (2) have taken a substantial step toward the commission of the offense that strongly corroborates his criminal intent . . . The intent element of a federal attempt offense requires the defendant to have the specific intent to commit each element of the completed federal offense." Id. (internal citations omitted). The court found that the text of the Elements Clause makes clear that actual force need not be used for a crime to qualify as a crime of violence. Id. at 352. The court reached its conclusion concerning the applicability of section 924(c) to attempted Hobbs Act robbery by relying primarily on the reasoning employed in Hill v. United States, in which the Seventh Circuit Court of Appeals had rejected an argument that attempted murder was not a crime of violence under the Armed Career Criminal Act's ("ACCA") elements clause, see 18 U.S.C. section 924(e)(2)(B)(i), which is nearly identical to section 924(c)'s Elements Clause. Id. at 352 (citing Hill v. United States, 877 F.3d 717 (7th Cir.

2017)).  In Hill, the Seventh Circuit concluded that an attempt to commit a violent felony under the ACCA is also a violent felony.  877 F.3d at 719.

The St. Hubert II panel, adopting Hill's analysis, reasoned as follows: (1) in order to be guilty of attempt, a defendant must intend to commit every element of the completed crime; (2) an attempt to commit a crime should therefore be treated as an attempt to commit every element of that crime; and (3), when the intent element of the attempt offense includes intent to commit violence against the person of another, it follows that the attempt crime itself includes violence as an element.  St. Hubert II, 909 F.3d at 352 (internal quotations and citations omitted).  Based on this logic, the court concluded that, because completed Hobbs Act robbery "necessarily includes the use, attempted use, or threatened use of physical force, then by extension the attempted taking of such property from a person in the same forcible manner must also include at least the 'attempted use' of force," because the attempt requires an intention to commit every element of Hobbs Act robbery.  Id. at 351-52.  Most courts that have considered this issue, including the Seventh and Ninth Circuit Courts of Appeals, have followed this same line of reasoning.  See, e.g., US v. Ingram, 947 F.3d 1021, 1026 (7th Cir. 2020)(extending Hill's ruling to section 924(c)'s definition of a crime of violence such that "when a substantive offense would be a violent felony under [section 924(c)], an attempt to commit that offense also is a violent felony so long as the attempt offense requires proof of intent to commit all elements of the completed crime") (internal quotations omitted); US v. Dominguez, 954 F.3d 1251, 1255 (9th Cir. 2020) ("We agree with the Eleventh Circuit that attempted Hobbs Act armed robbery is a crime of violence for purposes of § 924(c) . . . It is impossible to commit attempted Hobbs Act robbery without specifically intending to commit every element of the completed crime, which includes the commission or threat of physical violence. 18 U.S.C. § 1951. Since Hobbs Act

robbery is a crime of violence, it follows that the attempt to commit Hobbs Act robbery is a crime of violence.") (citation omitted); United States v. Brown, No. 11-CR-63(HEH), 2019 WL 3451306, at *3 (E.D. Va. July 30, 2019) (following St. Hubert II); Banks v. United States, No. 2:09-CR-20491, 2019 WL 3225723, at *2 (W.D. Tenn. July 17, 2019) (same).

The small number of courts that have diverged from the majority, holding that attempted Hobbs Act robbery is not a crime of violence, have concurred in the reasoning of Judge Jill Pryor's dissenting opinion in United States v. St. Hubert, 918 F.3d 1174, 1212 (11th Cir. 2019) ("St. Hubert III") (Pryor, J., joined by Martin and Wilson, JJ., dissenting from denial of rehearing en banc (the "Pryor Dissent")).  The Pryor Dissent, in explaining why rehearing should have been granted, characterized the St. Hubert II panel decision as having made "two right turns before it took a wrong turn" which "led to a logical and legal dead end." Id. at 1211. Judge Pryor identified the legal error made by the panel as its reliance on the Seventh Circuit's decision in holding in Hill that, "when a substantive offense qualifies as a violent felony under [§ 924(c)'s elements clause], an attempt to commit that offense is also a violent felony." Id. at 1212 (quotation and citation omitted; alteration in original).  Judge Pryor explained that, to the contrary, a conviction for an attempt crime does not necessarily mean the individual attempted to commit every element of the crime of violence.  Id.  The Pryor Dissent distinguishes between intent and attempt, reasoning that the only way to reach the conclusion that every attempt to commit a crime of violence is itself a crime of violence is

> by converting intent to commit each element of the substantive offense (which is necessary to convict someone of an attempt crime) into attempt to commit each element of the substantive offense (which is not necessary to convict someone of an attempt crime).  Intending to commit each element of a crime involving the use of force simply is not the same as attempting to commit each element of that crime.

Id. (emphases in original).  See also, Tucker, 2020 WL 93951, at *6 ("[T]his Court concurs with Judge Pryor and two other judges of the 11th Circuit that, 'it is incorrect to say that a person necessarily attempts to use physical force within the meaning of 924(c)'s elements clause just because he attempts a crime that, if completed would be violent.'"); Lofton v. United States, No. 604CR06063MATMWP, 2020 WL 362348, at *7 (W.D.N.Y. Jan. 22, 2020) ("Where the St. Hubert II panel and the Seventh Circuit in Michael Hill 'went wrong' was in concluding that 'when a substantive offense qualifies as a violent felony under [§ 924(c)'s elements clause], an attempt to commit that offense also is a violent felony.'") (alteration in original).

This Court finds the Pryor Dissent's reasoning persuasive and respectfully disagrees with the Eleventh Circuit's opinion in St. Hubert II, which fails to conduct the thorough categorical analysis that is mandated by the Supreme Court in Johnson and Davis.  The categorical approach requires an examination of the elements specified in section 924(c)(3)(A) as necessary to establish a crime of violence to the minimum criminal conduct necessary for a conviction of the offense sought to be treated as a crime of violence.  To find that an offense is a crime of violence within the meaning of the Elements Clause, the court must determine that "the minimum criminal conduct necessary for conviction under a particular statute" necessarily involves violence.  In weighing the issue, the court "focus[es] only on the elements of the offense and do[es] not consider the particular facts of the [defendant's] underlying crime."  Hendricks, 921 F.3d at 327.  As the St. Hubert II court recognized, attempt has two elements under federal law: (1) intent to commit each element of the substantive crime, and (2) a substantial step toward committing the crime that strongly corroborates the intent to commit the crime.  909 F.3d at 351.  Yet, rather than identifying the minimum conduct necessary for an attempted Hobbs Act robbery conviction and analyzing whether such conduct necessarily involves the use or attempted use of

physical force, an analysis that must necessarily focus on the "substantial step" element of an attempt crime under federal law, the St. Hubert II line of reasoning focuses primarily on the intent element of an attempt crime.

The St. Hubert II panel made an unwarranted logical leap in summarily concluding that an intent to commit a violent crime necessarily constitutes an attempt to commit each element of the crime, regardless of whether the actual conduct required for an attempt conviction has any necessary direct connection to violent conduct.  Such logic conflates the two elements of an attempt crime, and neglects the particular focus of the Elements Clause, which as relevant here requires a determination as to whether the elements of an attempt crime necessarily involve a use, attempted use, or threatened use of physical force.  See 18 U.S.C. § 924(c)(3)(A); Tucker, 2020 WL 93951 at *6 ("[A]n absolute rule (i.e. that an attempt to commit any violent crime will necessarily be itself a violent crime) seems at odds with the requirements of the categorical analysis in which a court must examine 'the minimum criminal conduct necessary for conviction under a particular statute.'") (citations omitted) (emphasis added in Tucker); United States v. Cheese, No. 18-CR-33-2 (NGG), 2020 WL 705217, at *3 (E.D.N.Y. Feb. 12, 2020) (noting that the Seventh Circuit's decision in Ingram, which held that attempted Hobbs Act robbery constitutes a crime of violence, "merely repeats the logic that where the underlying crime is a crime of violence, an attempt to commit that crime must also be a crime of violence, because such an attempt 'requires proof of intent to commit all elements of the complete crime,'" and "fails to meaningfully grapple with the categorical approach.")

Ramos argues that attempted Hobbs Act robbery is not a crime of violence under section 924(c) because the elements of the attempt offense at issue do not necessarily involve physical force.  As explained above, the elements necessary to support a federal attempt

conviction are (i) intent to commit the crime and (ii) a substantial step towards its completion. United States v. Gagliardi, 506 F.3d 140, 150 (2d Cir. 2007). A "substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." United States v. Farhane, 634 F.3d 127, 146 (2d Cir. 2011) (citation omitted). In this connection, it is particularly significant that, in United States v. Jackson, the Second Circuit found that "surveilling the target" constitutes the minimum criminal conduct necessary for an attempted Hobbs Act robbery conviction. 560 F.2d 112, 120-21 (2d Cir. 1977). Ramos argues that, because surveilling a target does not involve the use, threatened use, or attempted use of violence, it follows that attempted Hobbs Act robbery is categorically outside the reach of the Elements Clause. The Court agrees.

In Jackson, the Court of Appeals affirmed the district court's finding that the defendants' conduct in "reconnoiter[ing] the place contemplated for the commission of the crime and [possession of] paraphernalia to be employed in the commission of the crime[,]" constituted a substantial step in furtherance of a robbery because it strongly corroborated "the firmness of their obvious criminal intent." 560 F.2d at 116. "[T]he Second Circuit has applied Jackson's substantial step analysis in cases involving sufficiency of the evidence challenges to convictions under the Hobbs Act for attempted robbery." Lofton, 2020 WL 362348 at *8 (citing United States v. Gonzalez, 441 F. App'x 31 (2d Cir. 2011) (summary order) (citing Jackson and holding that legally sufficient evidence supported substantial step element of attempted Hobbs Act robbery where defendants had cased the scene of the robbery and were in possession of the tools necessary to carry out the crime)); see also Tucker, 2020 WL 93951, at *6 (finding that defendant who relied on Jackson "reasonably interpret[ed] 'surveillance' as the 'minimum criminal conduct,' necessary to convict for attempted Hobbs Act robbery").

The plain language of the definition of a crime of violence under section 924(c)(3)(A), examined through the lens of the categorical approach, requires a connection between the culpable conduct (in the case of an attempt conviction, the conduct constituting a substantial step toward committing the crime) and the use, attempted use, or threatened use of force, and not merely an intent to use, attempt to use, or threat to use force at some point in the commission of the substantive crime.  Therefore, because the minimum criminal conduct sufficient for a conviction of attempted Hobbs Act robbery, as identified by the Second Circuit in Jackson, does not involve the use, attempted use, or threatened use of force, it follows that one can commit attempted Hobbs Act robbery without ever having reached the point of using, attempting, or threatening to use force.  Jackson provides a concrete foundation for the determination that attempted Hobbs Act robbery is not a crime of violence within the meaning of section 924(c)(3)(A).  See United States v. Hill, 890 F.3d 51, 56 (2d Cir. 2018) (stating that, to show that a crime is not a crime of violence, "[T]here must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence. [ ] To show that a particular reading of the statute is realistic, a defendant 'must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues.'") (quoting Gonzales v. Duenas–Alvarez, 549 U.S. 183, 193 (2007)).  The Pryor Dissent provides another clear, real-world example:

> We can easily imagine that a person may engage in an overt act—in the case of robbery, for example, overt acts might include renting a getaway van, parking the van a block away from the bank, and approaching the bank's door before being thwarted—without having used, attempted to use, or threatened to use force. Would this would-be robber have intended to use, attempt to use, or threaten to use force? Sure. Would he necessarily have attempted to use force? No.

Pryor Dissent to St. Hubert III, 918 F.3d at 1212 (emphasis in original).

The plain language of section 924(c)(3)(A), which is focused on conduct, makes it clear that intent to use, attempt or threaten force is not enough.  The conduct element of attempted Hobbs Act robbery, namely the substantial step element, does not necessarily involve the use, attempted use, or threatened use of force and is insufficient to render attempted Hobbs Act robbery a crime of violence within the meaning of section 924(c)(3)(A) under the categorical approach.  Thus, regardless of whether there is intent to use force, a proper categorical analysis leads to the conclusion that attempted Hobbs Act robbery is not a crime of violence within the meaning of the Elements Clause of 18 U.S.C. section 924(c).  See Tucker, 2020 WL 93951 at *6 (concluding that, since reconnoitering a target or possessing paraphernalia to be used in commission of the crime can constitute a "substantial step" in the Second Circuit, "the elements of attempt to commit robbery could clearly be met without any use, attempted use, or threatened use of violence") (quotation omitted).

For these reasons, the Court finds that attempted Hobbs Act robbery, the predicate crime for Petitioner's section 924(c)(3)(A) conviction, is not a "crime of violence" within the meaning of the Elements Clause.  Therefore, the Court grants the Johnson aspect of Petitioner's motion and will vacate his conviction of the crime charged in Count Three of the Sixth Superseding Indictment.

Resentencing

In his Motion, Petitioner also asserts that he is entitled to be resentenced on each of his remaining counts of conviction because the New Jersey Conviction, which is no longer valid, was used to enhance his federal sentence in its entirety.  Petitioner argues for plenary resentencing on the bases that vacatur of the New Jersey Conviction: 1) lowers his calculated Guidelines range, and 2) lowers the mandatory minimums on Counts Twelve, Fourteen and

Fifteen (the "narcotics counts"), which had been enhanced by the prior conviction and were considered by the Court "'with respect to the determination and structure of [Petitioner's federal] sentence.'"  (Motion at 3 (quoting Motion Ex. C "Sentencing Transcript" at 32-33.))  The Government concedes that Petitioner should be resentenced on the narcotics counts, but argues that there is no basis for a de novo plenary resentencing on Counts One and Two.  Opp. at 2-3.

The Court agrees that Petitioner is entitled to be resentenced on the narcotics counts because the filing of the prior felony information based on the New Jersey Conviction increased Ramos' mandatory minimum term of imprisonment on Count Twelve from 10 to 20 years, and the mandatory maximum term of imprisonment on Counts Fourteen and Fifteen from 20 to 30 years.  See United States v. Doe, 239 F.3d 473, 475 (2d Cir. 2001) ("[D]efendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions.")  Petitioner is entitled to have the Court consider the proper available sentencing ranges in connection with the reimposition of sentences on the narcotics counts.

The Court now turns to the question of whether Petitioner is entitled to be resentenced on Counts One and Two in light of the effect of the vacatur of the New Jersey Conviction on (i) the overall sentencing Guidelines range calculations and (ii) the mandatory minimums applicable to his narcotics convictions.  As explained above, collateral relief under 28 U.S.C. section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Bokun, 73 F.3d at 12 (internal quotation omitted).  The grounds for relief under section 2255 are narrowly limited out of "respect for the

finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place[.]"  Id.

This Court sentenced Petitioner to 240 months of imprisonment on each of Counts One and Two, which was in each case the maximum statutory sentence.  The New Jersey Conviction did not affect the statutory sentencing range for Counts One and Two.  The applicable Guidelines sentencing range for Petitioner at the time of sentencing, based on the then-applicable offense level of 40 and Criminal History Category of II, was "324 to 405 months' imprisonment on every non-§ 924(c) count."  See Cruz M. Ramos' Reply Memorandum of Law in Support of His Amended Motion to Vacate under 28 U.S.C. § 2255, the "Reply," Docket Entry No. 320 at 7.  Absent the New Jersey Conviction, Petitioner "would have been in Criminal History Category I, and therefore would have had an overall range of 292 to 365 months on the non-§ 924(c) counts."  Id.  However, the statutory maximum sentence of 240 months capped the authorized Guideline sentence for Counts One and Two pursuant to U.S.S.G. section 5G1.1(a) and thus became the advisory Guideline sentence for those counts.  Therefore, Petitioner's 240-month sentences on Counts One and Two remain equal to the actual Guideline sentence for each count and remain below both the original and the recomputed ranges under the Guideline formulae; they are neither violative of law nor suggestive of any miscarriage of justice.

Nor does the decrease in Petitioner's mandatory minimum sentence as a result of the vacatur of the New Jersey Conviction warrant resentencing on Counts One and Two.  Petitioner argues for plenary resentencing because the prior felony information elevated the aggregate mandatory minimum term of imprisonment on the narcotics and firearms counts from 15 to 25 years; Petitioner asserts the resulting 25-year mandatory minimum term was "central" to

the Court's determination as to the appropriate sentence overall, not just on the narcotics counts, because the Court stated that it had "considered the role of the mandatory minimum sentencing provisions with respect to the determination and structure of the sentence." Reply at 7 (citing Sent. Tr. at 32-33) (emphasis in original). The Court's acknowledgement of the mandatory minimums on the other counts when it imposed higher (but still below-Guidelines) sentences on the narcotics counts and a lower, statutory maximum Guidelines sentence on each of the Hobbs Act counts suggests no legal error or otherwise improper connection between the narcotics sentences and the sentences on Counts One and Two.

Accordingly, the Court finds that there is no proper basis for vacatur of the sentences imposed in respect of Counts One and Two, notwithstanding the newly calculated Guidelines range and reduction in the mandatory minimum for the narcotics counts, because the sentences are not unlawful and the impact of the vacatur of the New Jersey Conviction and Ramos' Count Three conviction does not otherwise warrant relief under section 2255 from the sentences on Counts One and Two on grounds of "a complete miscarriage of justice." See United States v. Hoskins, 905 F.3d 97, 106 (2d Cir. 2018), cert. denied, 140 S. Ct. 55 (2019) (finding that "the determinative question on a § 2255 sentence challenge is not whether the original sentence was based on a Guidelines range that subsequent events rendered inapplicable, but whether maintenance of the sentence in light of those events manifests a complete miscarriage of justice" and denying a section 2255 petition because the defendant's original sentence did not constitute a "miscarriage of justice even after the [prior state conviction] was vacated[.]") For these reasons, the Court finds Ramos is not entitled to resentencing with respect to Counts One and Two.

C<span style="font-variant:small-caps">onclusion</span>

The <u>Johnson</u> aspect of Petitioner's motion pursuant to 28 U.S.C. section 2255 is granted to the extent it seeks vacatur of Petitioner's conviction under 18 U.S.C. section 924(c) of the crime charged in Count Three of the Sixth Superseding Indictment.  Petitioner's motion is also granted to the extent it seeks resentencing on Counts Twelve, Fourteen and Fifteen of the Sixth Superseding Indictment, and is denied to the extent it seeks resentencing on Counts One and Two.  The Court consequently **vacates** the judgment of conviction on Count Three, and vacates the sentences imposed in respect of Counts Twelve, Fourteen and Fifteen.  The Probation Office will be directed to prepare an updated Pre-Sentence Report including revised sentencing guideline calculations and sentencing recommendations as to Counts Twelve, Fourteen and Fifteen.

The parties are directed to appear for a resentencing hearing on November 2, 2020, at 10:30 a.m.  The Government is directed to have Petitioner produced for the sentencing, unless Petitioner, after consultation with his counsel and in light of COVID-19 related transport and quarantine issues, agrees to proceed remotely or waives altogether his right to be present for the resentencing.  Defense Counsel must file a written statement concerning Petitioner's decision in this regard no later than 21 days before the sentencing date.  Petitioner's sentencing submission must be filed no later than 14 days before the sentencing date, and the Government's sentencing submission must be filed no later than 7 days before the sentencing date.

This Memorandum Opinion and Order resolves docket entry nos. 284 and 304. The Clerk of Court is directed to enter judgment in accordance with this decision and close 16 CV 4499.

SO ORDERED.

Dated: New York, New York
September 2, 2020

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge